# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-07-00179-CR

**Steven John Maher, Appellant**

**v.**

**The State of Texas, Appellee**

**FROM THE DISTRICT COURT OF LAMPASAS COUNTY, 27TH JUDICIAL DISTRICT
NO. 7959, HONORABLE JOE CARROLL, JUDGE PRESIDING**

## M E M O R A N D U M   O P I N I O N

A jury found appellant Steven John Maher guilty of aggravated assault and obstruction. *See* Tex. Penal Code Ann. §§ 22.02, 36.06 (West Supp. 2007). After finding that appellant had a previous felony conviction, the court assessed punishment at thirty-five years' imprisonment for the assault and at twenty years' imprisonment for the obstruction. We will overrule appellant's challenge to the legal sufficiency of the evidence, but we will sustain his contention that the trial court erred by admitting extraneous misconduct evidence and reverse the obstruction conviction.

Count one of the indictment, for aggravated assault, alleged that appellant intentionally or knowingly threatened Michelle Collins with imminent bodily injury by brandishing a hatchet at her, and that the hatchet was a deadly weapon in the manner of its use or intended use. *See id*. § 22.02(a)(2). Count two of the indictment, for obstruction, alleged that appellant

intentionally or knowingly threatened to harm Collins "by an unlawful act, to-wit:  restraining, threatening with a hatchet, and damaging her car, to prevent or delay" Collins's service "as an informant and a witness."  *See id*. § 36.06(a)(2)(A).

Collins testified that she, appellant, and Joseph Jacobs were at a trailer house in rural Lampasas County on September 29, 2006, "talking and basically having fun."[1]  Collins said that she and appellant "started kind of having a little bit of an argument" over a broken glass pipe of the sort used to smoke narcotics.  She testified that she went to the bedroom to avoid the argument, but appellant followed, jumped on her, and began to choke her.  Collins responded by biting appellant on the chest and striking him with her fists, and he began to slam her head on the floor.  Jacobs heard the ruckus, came to the bedroom, and separated the combatants.

When this fight ended, appellant left the room and Collins began to pack her things to leave.  When Collins and Jacobs went outside, however, appellant was sitting in Collins's car.  Collins asked appellant to get out of the car, but he refused.  Collins testified that appellant had a "buck knife between him and the seat."[2]  This knife, introduced in evidence, was a hunting knife with a five-inch blade.  Collins said that this encounter "became another fight," during which one of her car windows "got busted out."  Collins acknowledged that she broke the window with her fist. Finally, appellant got out of the car, and Collins and Jacobs drove away.

---

[1]  The trailer was the residence of George Truitt.  Truitt testified that appellant was staying there while Truitt was out of town on a trip.

[2]  Jacobs testified that while Collins was trying to get appellant out of her car, appellant asked Jacobs to take the knife before he did "something stupid."

Collins drove to her father's house where a package for appellant had been delivered.[3] Collins decided to take this package to appellant "because I didn't want anything to do with him anymore." When Collins and Jacobs returned to the trailer, appellant "walked around the side of the house" carrying the knife and a hatchet. Collins testified that she "pretty much got the idea that [appellant] was not in a happy mood" and sensed that "something was going to happen." Trying to stay away from appellant, she threw him the package. When appellant opened the package, Collins saw that it contained "dope." During cross-examination, Collins said that this "dope" was methamphetamine, which she could recognize because she had been a user of the drug in the past. Collins testified that appellant, referring to the methamphetamine, "accused me of stealing it," and she denied it.[4] She added, "And that's when he got pissed off or got mad or whatever."

Collins testified that she was also "a little bit pissed off" because appellant had had the methamphetamine mailed to her father's house, and that she told appellant that she was going to the police. Asked if appellant's demeanor changed when she told him this, Collins answered, "He was already mad as it was. I don't think he could have got any madder."

Collins testified that when she tried to get back in her car to leave, appellant, still armed with the knife and hatchet, blocked her way. Using the knife, appellant "started bashing out [Collins's] driver's window." Collins answered affirmatively when asked if she was afraid that appellant would hurt her. After breaking the car window, appellant threw the knife into the car.

---

[3] The package was addressed to Collins at her father's address, but Collins had been told by appellant that a package for him was being sent to her. She testified that she did not know what the package contained.

[4] Jacobs testified that appellant told Collins that his "seven grams better be here."

Collins said that she then pulled her own pocket knife, and appellant backed away from her so that she could get in her car. As she prepared to drive away with Jacobs, appellant threw the hatchet, which "came plowing through [Collins's] back window" and "hit [the] console in between" the front seats. Collins returned to her father's house and called the police.

When there is a challenge to the sufficiency of the evidence to sustain a criminal conviction, the question presented is whether a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). In a legal sufficiency review, all the evidence is reviewed in the light most favorable to the verdict; it is assumed that the trier of fact resolved conflicts in the testimony, weighed the evidence, and drew reasonable inferences in a manner that supports the verdict. *Id*.

To prove that appellant was guilty of obstruction, the State was required to show not only that appellant intentionally or knowingly engaged in the alleged conduct, but also that he engaged in this conduct with the specific intent to prevent or delay Collins's service as a witness or informant. *See Herrera v. State*, 915 S.W.2d 94, 97 (Tex. App.—San Antonio 1996, no pet.). Appellant argues that there is no evidence that he committed the conduct alleged in count two with the requisite intent. The State responds simply, "After Collins told Appellant she was going to the police and started to leave, Appellant attempted to cut her off and damaged her car. The State met its burden."

As is so often the case, the jury was required to infer appellant's intent from his conduct and the surrounding circumstances. The assaultive conduct alleged in count two was the culmination of a series of violent disagreements between appellant and Collins on the afternoon in

4

question, and the jury easily could have inferred that the charged conduct was merely a further expression of appellant's previous anger. Nevertheless, when Collins told appellant that she was going to the police, he stood between her and her car, smashed the window with his knife, and then threw the hatchet through the rear window. The jury could rationally infer that this conduct under these circumstances was intended to frighten Collins so as to deter her from going to the police. We therefore conclude that the evidence is legally sufficient to support a finding beyond a reasonable doubt that appellant brandished the hatchet and damaged Collins's car specifically intending to prevent or delay her service as a witness or informant. Appellant does not otherwise question the sufficiency of the evidence. Issue two is overruled.

The State's last witness at the guilt/innocence stage was Copperas Cove Police Officer Michael Gonzales. Gonzales testified that on the night of October 17, 2006, he was "looking for another subject that had ran from us earlier" when he spotted a person who fit the description of this "subject." He turned the spotlight of his patrol car on this person, who "took off running." As he ran, the person dropped the backpack he was carrying. Gonzales succeeded in stopping this person, who turned out to be appellant. Gonzales retrieved the backpack and opened it. It contained (among other things) appellant's identification, brass knuckles, a knife, pepper spray, "numerous controlled pills," hypodermic syringes, and "three glass cocaine smoking devices" with residue in them. Gonzales described the pills as prescription drugs in blister packs.

The trial court considered the admissibility of Gonzales's testimony outside the jury's presence. Appellant, who represented himself at trial, objected to the relevance of the proffered testimony. The court ruled that "flight is always evidence of guilt" and "that's certainly admissible."

5

Appellant does not challenge this ruling. The State argued that appellant's possession of the weapons, controlled substances, and syringes was admissible "to show [appellant's] intent to use violent force in order to protect him and protect his drugs from detection by law enforcement." The State further argued that appellant's possession of the crack pipes and syringes rebutted the "inference that he's tried to establish through cross-examination of the complainant and the other witnesses about the victim's drug use." The court ruled that testimony regarding the contents of the backpack was admissible for the limited purpose of showing appellant's intent and motive regarding the charged offenses. Later, during Gonzales's testimony, the court instructed the jurors that they were to consider evidence that appellant had committed offenses for which he was not on trial only if they believed beyond a reasonable doubt that the evidence was true, and then only to determine appellant's "intent or knowledge or plan" with regard to the charged offenses.[5]

Appellant contends that the trial court erred by permitting Gonzales to testify regarding the contents of the backpack. He urges that the testimony constituted evidence of other crimes or bad acts that had no relevance to the offenses for which he was on trial. *See* Tex. R. Evid. 404(b). Evidence of other crimes or wrongs is not admissible merely as a circumstance of the defendant's arrest. *Couret v. State*, 792 S.W.2d 106, 107 (Tex. Crim. App. 1990). Instead, the evidence must be relevant to a material issue in the case and its probative value must outweigh the danger of unfair prejudice. *Id.*[6]

---

[5] The court included a substantially similar instruction in its written charge, limiting the jury's consideration of extraneous offense evidence to the question of appellant's intent or motive.

[6] Appellant concedes that no error was preserved under rule 403. Tex. R. App. P. 403; *see Montgomery v. State*, 810 S.W.2d 372, 388 (Tex. Crim. App. 1991) (op. on reh'g).

In its brief, the State asserts without further explanation, that the evidence of appellant's possession of weapons, drugs, and drug paraphernalia at the time of his arrest: (1) was "directly relevant to Appellant's intent to prevent and delay Collins from informing and being a witness to his drug activities," (2) "demonstrate[d] Appellant's intent to threaten Collins," and (3) was "relevant to Appellant's use of the knife and hatchet as deadly weapons." It is not facially apparent, however, how appellant's possession of brass knuckles, drug paraphernalia, and prescription drugs (which were not shown to have been unlawfully possessed) on October 17 was relevant to show that on September 29 appellant used or intended to use the knife and hatchet in a manner capable of causing death or serious bodily injury. *See* Tex. Penal Code Ann. § 1.07(a)(17)(B) (West Supp. 2007). We also do not see how the contents of appellant's backpack at the time of his arrest shed any light on appellant's intentions when he assaulted Collins three weeks earlier. We note that the State does not cite this evidence in its response to appellant's challenge to the sufficiency of the evidence. Under the circumstances shown by this record, the challenged evidence had no relevance to the offenses for which appellant was on trial and served only to prove appellant's bad character. The court erred by admitting the evidence over appellant's timely objection.

Having found error in the admission of this evidence, we must examine the record to determine if the error affected a substantial right. *See* Tex. R. App. P. 44.2(b). We consider only whether the error contributed to appellant's convictions because it was proper to consider the extraneous misconduct evidence in determining appellant's punishments. *See* Tex. Code Crim. Proc. Ann. art. 37.07, § 3(a)(1) (West Supp. 2007).

7

During the State's cross-examination of Malisa Casiano, appellant's fiancee and the only defense witness at the guilt stage, the prosecutor was permitted to ask the witness over objection if she knew why appellant had "cocaine smoking pipes" and syringes in his backpack when he was arrested. Casiano said that appellant did not use drugs, and she did not know why he had the pipes. She said that appellant used the syringes to refill printer ink cartridges. The prosecutor also brought up appellant's arrest during jury argument. After reminding the jurors of Gonzales's testimony, he told them that the court "has instructed you that offenses . . . that aren't charged in this indictment—what we're talking about is the arrest in Copperas Cove—can only be used to go to the intent and motive of Mr. Maher." He went on, "[H]e's got knuckles, pepper spray, a big knife, syringes, drug pipes. He's got all of that all together. It shows his intent to use violent force to protect his drug activities. That's what he was doing when he assaulted Ms. Collins. That's what he was doing when he tried to stop Ms. Collins from leaving that day."

We conclude that the erroneous admission of the extraneous misconduct evidence was harmless with respect to appellant's conviction for aggravated assault. The principal issue in the assault prosecution was not appellant's motive or intent, but whether he did in fact threaten Collins with the hatchet in the manner alleged. Both Collins and Jacobs testified that appellant brandished the hatchet and then threw it, smashing the rear window of Collins's car and causing the hatchet to land between them. Collins's father also testified to the damage done to the car. Truitt, who owned the trailer, testified that appellant told him that he had "tried to stop [Collins]," that he "[h]ad a hatchet in his hand," and that "he might have hit the window with the hatchet." In light of the considerable evidence that appellant threatened Collins with the hatchet and used the hatchet as a deadly weapon, we conclude that the erroneous admission of the extraneous misconduct evidence

8

did not contribute to his conviction for aggravated assault. *See Motilla v. State*, 78 S.W.3d 352, 358 (Tex. Crim. App. 2002) (evidence of defendant's guilt is factor to consider in harm analysis).

We reach a different conclusion with respect to appellant's conviction for obstruction. The critical issue in this prosecution was whether appellant assaulted Collins for the purpose of preventing or delaying her going to the police. The trial court twice instructed the jurors that they could consider extraneous misconduct evidence to determine appellant's motive and intent. In his argument, the prosecutor reminded the jurors of this instruction and explicitly asserted that the contents of appellant's backpack at the time of his arrest proved that appellant had intended to stop Collins from going to the police when he assaulted her. Given the closeness of the intent question, we conclude that the erroneously admitted evidence was likely to have influenced the jury's determination of the issue. The error thus affected appellant's substantial right to be convicted only on the basis of admissible evidence.

The district court prepared and filed two judgments. We affirm the judgment of conviction on count one for aggravated assault. We reverse the judgment of conviction on count two for obstruction and remand the cause to the trial court for further proceedings.

_____

W. Kenneth Law, Chief Justice

Before Chief Justice Law, Justices Waldrop and Henson

Affirmed in part; Reversed and Remanded in part

Filed: July 10, 2008

Do Not Publish

9